FILED

14 SEP -3 AM 9: 34

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY _____ DEPUTY

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUBEN GARCIA,<br><br>                 Plaintiff,<br>vs.<br><br>D. STRAYHORN, et al.,<br><br>                 Defendants. | CASE NO. 13-CV-807-BEN (KSC)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**<br><br>[Doc. No. 15.] |

    Ruben Garcia, a state prisoner proceeding *pro se*, filed a civil rights Complaint pursuant to Title 42, United States Code, Section 1983, on April 3, 2013. [Doc. No. 1.] Plaintiff then filed a First Amended Complaint on May 13, 2013. [Doc. No. 3.] On June 6, 2013, this Court dismissed Plaintiff's First Amended Complaint *sua sponte* pursuant to Title 28, United States Code, Sections 1915(e)(2) and 1915A(b). Plaintiff was granted leave to amend in order to correct all of the deficiencies identified by the Court in his pleading. [Doc. No. 5, at pp. 6-7.] Plaintiff then filed a Second Amended Complaint on July 16, 2013. [Doc. No. 6.]

    On September 23, 2013, this Court issued a second Order pursuant to Title 28, United States Code, Sections 1915(e)(2) and 1915A(b), dismissing some but not all of the claims in the Second Amended Complaint. [Doc. No. 7.] In this Order, the Court dismissed Plaintiff's claims that Defendants conspired to violate his constitutional rights and violated his constitutional rights under the Equal Protection Clause of the

Fourteenth Amendment. [Doc. No. 7, at pp. 3-4.] In addition, the District Court dismissed all of Plaintiff's claims based on supervisory liability against Defendants Franco, Reid, Hernandez, and Seibel for failure to state a claim. [Doc. No. 7, at p. 5.] The District Court also concluded Plaintiff failed to state a claim for retaliation against Defendant Stricklin. [Doc. No. 7, at p. 5.] These defendants were all terminated from the Court's docket. [Doc. No. 7, at p. 6.] However, the District Court concluded that Plaintiff sufficiently pled claims for retaliation against Defendants Strayhorn and Luna and ordered them to respond to the Second Amended Complaint. [Doc. No. 7, at p. 6-7.]

Currently before the Court is Defendants' Motion to Dismiss the Second Amended Complaint pursuant to Federal Rule 12(b)(6) for failure to state a claim. [Doc. No. 15.] In their Motion to Dismiss, Defendants seek an order dismissing Plaintiff's retaliation claims against remaining defendants Strayhorn and Luna for failure to state a claim, without leave to amend. [Doc. No. 15, at p. 10.] Plaintiff has filed an Opposition to the Motion [Doc. No. 19] and Defendants filed a Reply [Doc. No. 20]. For the reasons outlined below, the Court finds that Defendants' Motion to Dismiss for failure to state a claim must be **GRANTED** in part and **DENIED** in part.

## *I. Background*

Plaintiff is housed at the Richard J. Donovan Correctional Facility in San Diego (RJDCF). [Doc. No. 6, at p. 1; Doc. No. 19, at p. 1.] In the operative Second Amended Complaint, Plaintiff describes two separate incidents on October 24, 2011 and April 26, 2012 that serve as the basis for his retaliation claims against Strayhorn and Luna. [Doc. No. 6, at pp. 5-19.] The following facts are drawn from Plaintiff's allegations in the Second Amended Complaint. The Court makes no findings of fact.

### *A. October 24, 2011 Incident*

Plaintiff alleges that on October 24, 2011, he had authority and a written pass to attend a pre-scheduled appointment with an optometry specialist at RJDCF. After the appointment, he was escorted by security personnel back to his housing unit and then

released to return to his cell. [Doc. No. 6, at p. 5.] While he was on his way, Plaintiff told another inmate: "[D]on't worry. I just came from TTA and [another inmate named Jimenez] just finished a[n] interview regarding a six-o-two against Strayhorn . . . all this stuff is catching up with him. . . ." [Doc. No. 6, at p. 5.][1] Strayhorn, who was standing nearby, stated: "[You're] p.c. so ain't nobody worry about you!" [Doc. No. 6, at p. 5.] Plaintiff claims that "p.c." is "prison lingo" and is used by inmates and prison staff to identify an inmate as a "jail house informant." [Doc. No. 6, at p. 6 n.3.] Plaintiff alleges that "a large number of inmates" overheard this remark. [Doc. No. 6, at p. 5.] According to Plaintiff, this remark threatened his safety and security because inmates identified as a "jail house informant" are targeted by other inmates for "assault, systematic abuse, or even death." [Doc. No. 6, at p. 6 n.3.]

In response to Strayhorn's "p.c." remark, Plaintiff said, "If you want to give me a direct order. . . I will gladly follow such orders . . . other than that we don't need to speak to each other, this is why you get six-o-two . . ." [Doc. No. 6, at p. 6.] Plaintiff stated that, "I'm six-o-twoing you." [Doc. No. 6, at p. 6.] Strayhorn ordered Plaintiff to return to his housing unit, and Plaintiff complied, but Strayhorn proceeded to "direct a [barrage] of derogatory verbal obscenities at the plaintiff." [Doc. No. 6, at pp. 6-7.] Specifically, Plaintiff alleges that Strayhorn stated: "You punk bitch don't get it . . you six-o-two me and you gonna make me fuck you-up! . . . I'm not like others you six-o-two . . . you hear!! . . . coward, p.c., scary bird . . . Try me bitch, Try me bitch!!, Try me bitch!!! . . . I know you hear me!!! . . . Try me bitch!!!"[2] [Doc. No. 6, at p. 7.] Plaintiff further alleges that Strayhorn left his post to make these remarks and that his conduct could not have had any legitimate penological interest. [Doc. No. 6, at p. 7 n.4.]

Next, Plaintiff alleges that Strayhorn walked fast to catch up to him as he

---

[1] "Six-o-two" is allegedly "prison lingo" used to refer to an inmate-generated grievance filed using a CDC-602 Inmate Appeal/Grievance Form. [Doc. No. 6, at p. 5, n. 2.]

[2] The Court notes that "verbal harassment" and "vulgar language" directed at an inmate by prison staff is generally not a constitutional violation. *Keenan v. Hall*, 83 F.3d 1083, 1092 (9th Cir. 1996).

continued on his way toward his housing unit. Strayhorn then stepped in front of Plaintiff, stopped him, and continued to "vent his anger" at Plaintiff with offensive remarks. [Doc. No. 6, at p. 7.] During this time, Luna arrived in the area, and Plaintiff "verbally expressed" to Luna his intent to file "a grievance with the CDCR to report defendant D. Strayhorn [sic] illegal acts and violation of his civil rights." [Doc. No. 6, at p. 7.] In response, Luna allegedly said: "[Y]ou file against my officer and I'll lock you up in Administrative Segregation . . . ." [Doc. No. 6, at p. 8.] Plaintiff said he intended to file a grievance to report "their serious acts of misconduct" regardless of any retaliatory or punitive acts which Luna and Strayhorn had already taken or planned to take against him. [Doc. No. 6, at p. 8.]

After these events, Plaintiff alleges that Strayhorn filed retaliatory disciplinary charges against him. [Doc. No. 6, at p. 8.] In these disciplinary charges, Strayhorn said that Plaintiff verbally threatened his safety and, as a result, he had to be placed in handcuffs. Strayhorn also claimed that Plaintiff stated that he was going to report him for use of excessive force. [Doc. No. 6, at p. 8.] Plaintiff further alleges that Luna filed a "retaliatory" Incident Report to support Strayhorn's retaliatory disciplinary charges and to provide a "cover" for Strayhorn's "illegal acts." [Doc. No. 6, at p. 8.] Plaintiff then filed a Form 602 to report the violation of his civil rights by Strayhorn and Luna. [Doc. No. 6, at p. 9.]

### *B. April 26, 2012 Incident*

Plaintiff alleges that on April 26, 2012, he went to the medical clinic for a doctor's appointment and waited "outside" the inmate waiting area to be called in for his appointment. A short time after he arrived, Strayhorn approached him and instructed him to "turn around." [Doc. No. 6, at p. 9.] Plaintiff complied by turning around to face the wall behind him. He was then handcuffed by Strayhorn. [Doc. No. 6, at p. 9.] Plaintiff stood silently without moving, then was escorted by two other staff members to a gymnasium, where he was locked up "inside a cage." [Doc. No. 6, at p. 9.]

After this incident, Plaintiff alleges that Strayhorn generated and filed more retaliatory disciplinary charges against him. In part, a "Misconduct Report" charges that Plaintiff had "displayed a disregard to Title 15 Policy § 3005(a)" which requires inmates to refrain from behavior that might lead to violence or disorder, or which otherwise endangers the facility, and that he called Strayhorn a "child molester in green." [Doc. No. 6, at p. 10.] In response, Plaintiff filed a grievance (Form 602) claiming a violation of his civil rights. [Doc. No. 6, at p. 10.]

The Second Amended Complaint also generally alleges that Defendants had no legitimate penological interest for their conduct and that Defendants' conduct was the actual or proximate case of the deprivation of Plaintiff's constitutional rights. [Doc. No. 6, at p. 16.] As a result of Defendants' alleged misconduct, Plaintiff seeks both monetary and injunctive relief. [Doc. No. 6, at p. 20.] Plaintiff apparently believes the misconduct charges made by Strayhorn and Luna could be used against him in the future, as he seeks an injunction to prevent Strayhorn from using fabricated charges to have him placed in Administrative Segregation. [Doc. No. 6, at p. 20.]

### C. *Exhibits Attached to the Second Amended Complaint*

Plaintiff has incorporated by reference all exhibits attached to the Second Amended Complaint. [Doc. No. 6, at pp. 16, 18.] Listed in chronological order, these exhibits include copies of the following documents that are relevant to the allegations in the Second Amended Complaint:

March 16, 2012 [Doc. No. 6, at pp. 43-44] (grievance on Form 602 by Plaintiff complaining that: (1) Strayhorn harassed him during a medical appointment on March 14, 2012; (2) Strayhorn has a "long history" of abusive treatment of Plaintiff and other inmates during medical appointments; (3) Strayhorn targets inmates because they file grievances against him; and (4) he was "currently awaiting a 3rd level response on a [Form] 602 to include c/o Strayhorn");

April 15, 2012 [Doc. No. 6, at p. 45] (Inmate Request (Form CDCR 22) inquiring about status of Form 602 submitted by Plaintiff on March 16, 2012 in which

he reported "serious misconduct" by Strayhorn that occurred on March 14, 2012);

April 29, 2012 [Doc. No. 6, at p. 48] (Inmate Request (Form CDCR 22) stating that Plaintiff filed two Form 602s reporting Strayhorn for harassment and that in retaliation Strayhorn cancelled two of Plaintiff's medical appointments and worked with other staff to perpetrate "lies, fabrications & false reports" seeking to have Plaintiff placed in Administrative Segregation);

May 1, 2012 [Doc. No. 6, at p. 50] (Inmate Request (Form CDCR 22) repeating statements made on Form CDCR 22 dated April 29, 2012, described above);

May 4, 2012 [Doc. No. 6, at p. 46] (Inmate Request (Form CDCR 22) requesting status of Form 602 submitted on March 16, 2012 in which he reported "serious acts of misconduct" by Strayhorn);

August 2, 2012 [Doc. No. 6, at pp. 61-62] (Inmate Request (Form CDCR 22) reporting that on July 25, 2012, he went to the medical clinic for an appointment and handed his appointment form to Strayhorn, but Strayhorn acted unethically by cancelling his appointment and noting that Strayhorn "has a history of retaliating against inmates that submit grievances");

Exhibits attached to the Second Amended Complaint also include a letter from Plaintiff to the Office of Inspector General dated May 15, 2012 making a formal complaint against Strayhorn. [Doc. No. 6, at pp. 52-54.] In the letter, Plaintiff complains that Strayhorn "has been using his position and authority to systematically abuse inmates . . . when they come into contact with him as they attend medical appointments at the facilities Medical Clinic." [Doc. No. 6, at p. 52.] The letter includes a number of examples of alleged abusive treatment of Plaintiff and other inmates by Strayhorn. [Doc. No. 6, at pp. 52-54.]

### D. Similar Grievances Against Strayhorn by Other Inmates

The Second Amended Complaint also alleges that Strayhorn's retaliatory conduct against Plaintiff is part of a larger pattern of retaliatory conduct by Strayhorn against a number of other inmates during the years he has worked as a security officer

at the medical clinic. When inmates report to the medical clinic for services, Plaintiff alleges that Strayhorn routinely engages in retaliatory acts to punish inmates for filing grievances against him to report his behavior. These alleged retaliatory acts include "physical altercations" or assaults, "false cancellations of inmate medical appointments," harassment, and threats. [Doc. No. 6, at p. 12-13.] According to Plaintiff, Strayhorn also routinely fabricates allegations to support disciplinary charges that he uses as a "calculated tactic" to "cover up" his illegal acts against inmates. [Doc. No. 6, at p. 13.] In support of these allegations, Plaintiff attached copies of other inmates' grievances about Strayhorn to the Second Amended Complaint. [Doc. No. 6, at pp. 21-41; 63-84.] He alleges that there are an unusually large number of disciplinary charges and misconduct reports generated by Strayhorn. [Doc. No. 6, at p. 14.] Plaintiff believes the exhibits and other prison records will support his claims against Strayhorn, because they will show an unusually "large volume" of inmate grievances, disciplinary charges, misconduct reports, incident reports, and altercations involving Strayhorn. [Doc. No. 6, at p. 14.]

## *II. Discussion*

In their Motion to Dismiss, Defendants seek dismissal of Plaintiff's retaliation allegations on the ground that Plaintiff has not pled sufficient facts against them based on the incidents from October 24, 2011 and April 26, 2012 to state viable claims for retaliation. Citing the sovereign immunity doctrine and the Eleventh Amendment, Defendants also seek dismissal of Plaintiff's claims for monetary damages to the extent they are being sought against them in their official capacity.

### *A. Motion to Dismiss Standards*.

A plaintiff's complaint must provide a "short and plain statement of the claim showing that [he] is entitled to relief." *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1122 (9th Cir. 2008) [hereinafter *Riverside*] (citing FED. R. CIV. P. 8(a)(2)). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what . . . the claim is and the grounds upon which it rests.'" *Erickson v.*

*Pardus*, 551 U.S. 89, 94 (2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

A motion to dismiss under Federal Rule 12(b)(6) may be based on either a "'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Riverside*, 534 F.3d at 1121-22 (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)). A motion to dismiss should be granted if the plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson*, 551 U.S. at 94. However, it is not necessary for the Court "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

On the other hand, "[a] document filed *pro se* is 'to be liberally construed,' [citation omitted] and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers . . . ." *Erickson*, 551 U.S. at 94. Particularly in civil rights cases, courts have an obligation to construe the pleadings liberally and to afford the plaintiff the benefit of any doubt. *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985).

### B. First Amendment Retaliation Claims Under Section 1983.

"Section 1983 does not create any substantive rights; rather it is the vehicle whereby plaintiffs can challenge actions by governmental officials." *Jones v. Williams*,

297 F.3d 930, 934 (9th Cir. 2002). "To prove a case under section 1983, the plaintiff must demonstrate that (1) the action occurred 'under color of state law' and (2) the action resulted in the deprivation of a constitutional right or federal statutory right." *Id.*

Although incarceration results in the "necessary withdrawal or limitation of many privileges and rights, . . . a prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-568 (9th Cir. 2005). "[P]risoners have a First Amendment right to file prison grievances. [Citations omitted.] Retaliation against prisoners for their exercise of this right is itself a constitutional violation, and prohibited as a matter of 'clearly established law.'" *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009).

### *1. Protected Speech.*

Defendants contend that Plaintiff has failed to state a claim against them for retaliation based on the incidents that allegedly took place on October 24, 2011, because he has not identified any protected speech that could have resulted in retaliation against him. Defendants also argue that Plaintiff's verbal threats or promises on October 24, 2011 indicating he intended to file a prison grievance or a "six-o-two" do not constitute speech that is protected by the First Amendment. [Doc. No. 15-1, at pp. 7, 9.] This Court disagrees.

Review of current caselaw indicates that an inmate's threat to file a prison grievance constitutes protected speech. In *Gifford v. Atchison, Topeka and Santa Fe Ry. Co.*, 685 F.2d 1149 (9th Cir. 1982), in the context of an employee's claim of

discrimination in retaliation for the employee's participation in First Amendment activity, the Ninth Circuit stated as follows in a footnote: "We see no legal distinction to be made between the filing of a charge which is clearly protected, [citation omitted], and threatening to file a charge." *Id.* at 1156 n.3. More recently, in the context of prisoner civil rights actions under Section 1983, a number of courts have concluded that verbal statements made by an inmate that essentially constitute a grievance, or that indicate an intent to file a formal written grievance, are protected by the First Amendment. *See, e.g., Pearson v. Welborn*, 471 F.3d 732, 741 (7th Cir. 2006) (declining to hold that "legitimate complaints by a prisoner lose their protected status simply because they are spoken"); *West v. Dizon*, No. 2:12-cv-1293, 2014 WL 794335, at *5-6 (E.D. Cal. Feb. 27, 2014) (stating that protected speech includes an inmate's verbal expression of an intent to submit a formal written grievance); *Hackworth v. Torres*, No. 1:06-cv-773, 2011 WL 1811035, at *1, 6 (E.D. Cal. May 12, 2011) (rejecting defendant's argument that an inmate's verbal objections to a prison policy during a housing classification committee meeting with prison staff was not protected by the First Amendment because the inmate had not filed a written grievance prior to the meeting); *Conkleton v. Muro*, No. 08-cv-2612, 2011 WL 1119869, at *3 (D. Colo. Mar. 28, 2011) (finding that the inmate's "verbal articulation" of "an intent to file a grievance" is protected activity); *Uribe v. McKesson*, No. 08-cv-1285, 2011 WL 9640, at *12 (E.D. Cal. Jan. 3, 2011) (concluding that an inmate's attempt to report a prison official's misconduct, either "verbally or in writing, constitutes speech or conduct entitled to First Amendment protection"); *Carter v. Dolce*, 647 F. Supp. 2d 826, 834 (E.D. Mich. Aug. 19, 2009) (concluding that an inmate's statement of intent to file a written grievance is protected by the First Amendment and stating that "[o]nce a prisoner makes clear his intention to resort to official channels to seek a remedy for ill treatment by a prison employee, retaliation against the prisoner by that employee implicates all the policies intended to protect the exercise of a constitutional right").

On the other hand, a number of district courts have found that verbal challenges

to prison officials that are argumentative, confrontational, and disrespectful are not protected by the First Amendment. *See Johnson v. Carroll*, No. 2:08-cv-1494, 2012 WL 2069561 at *33-34 (E.D. Cal. June 7, 2012) (citing cases). In *Johnson v. Carroll*, the District Court rejected the inmate's argument that his verbal statements made to correctional officers incident to a strip search were protected speech, because the statements were argumentative, confrontational, disrespectful, and "laced with expletives." *Id.* at *34. According to the District Court, the inmate's "protected recourse for challenging [the strip search] . . . was to file an administrative grievance." *Id.* The District Court therefore concluded that the plaintiff failed to state a First Amendment retaliation claim based on conduct by prison officials immediately after the search.

Here, Plaintiff alleges that on October 24, 2011, he told Strayhorn and Luna that he intended to file a formal written grievance to report Strayhorn's conduct. As alleged by Plaintiff, these statements were not argumentative, confrontational, or disrespectful. This Court finds persuasive the reasoning of the courts which have concluded that similar statements are protected by the First Amendment. Accordingly, the Court concludes that Plaintiff has sufficiently alleged that he engaged in protected speech on October 24, 2011 to survive a motion to dismiss.

With respect to the incident on April 26, 2012, Defendants argue that Plaintiff failed to identify or allege any act of protected speech that could have triggered Strayhorn to act in a retaliatory manner towards Plaintiff while he waited for his appointment at the medical clinic. [Doc. No. 15-1, at p. 9.] However, when the Second Amended Complaint is read liberally and as a whole, Plaintiff's allegations sufficiently identify protected speech that took place prior to the incident on April 26, 2012 that could have resulted in retaliatory acts by Strayhorn.

First, during the prior incident on October 24, 2011, Plaintiff told Strayhorn he intended to file a written grievance against him and, as outlined more fully above, this statement qualifies as protected speech. [Doc. No. 6, at p. 6.] Second, by the time of

the incident on April 26, 2012, the Second Amended Complaint alleges that Plaintiff had filed a formal, written grievance against Strayhorn about the incident on October 24, 2011. [Doc. No. 6, at p. 9.] In addition, exhibits[3] attached to the Second Amended Complaint indicate that Plaintiff filed another grievance against Strayhorn on March 16, 2012, alleging he had been harassed during a different medical appointment on March 14, 2012. At this time, Plaintiff also alleged that Strayhorn has a "long history" of abusive treatment of Plaintiff and other inmates during medical appointments. [Doc. No. 6, at p. 44.] In short, the Second Amended Complaint includes allegations from which it could be inferred that Plaintiff engaged in protected speech prior to the alleged retaliatory acts that resulted from the incident on April 26, 2012.

Based on the foregoing, Court finds that Plaintiff has sufficiently alleged he engaged in protected speech on or before October 24, 2011 and April 26, 2012 that could have triggered the alleged retaliatory acts by Defendants. Therefore, the Court finds that Defendants' Motion to Dismiss must be **DENIED** to the extent it seeks dismissal of Plaintiff's retaliation claims on the ground that Plaintiff did not allege he engaged in protected speech that could have resulted in retaliatory acts by Defendants.

### *2. Adverse Action.*

Defendants argue that Plaintiff has failed to state a retaliation cause of action against them because he has not alleged any actions by Defendants that are adverse enough to support the finding of a constitutional violation. According to Defendants, Plaintiff's allegations are insufficient because he has not claimed that any rules violation report was issued against him, that he suffered any loss of privileges or discipline, or that he was ever placed in administrative segregation. [Doc. No. 15-1,

---

[3] The Federal Rules of Civil Procedure provide as follows: "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." FED. R. CIV. P. 10(c). If the plaintiff has attached documents to a complaint, the District Court in considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim "is not limited by the allegations contained in the complaint." *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987). Exhibits attached to a complaint "may be considered" in determining the sufficiency of the pleading. *Id.*

at pp. 7-8, 9.]

"The adverse action need not be an independent constitutional violation." *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012). For example, an allegation by an inmate that he was transferred to another prison or placement because he engaged in protected conduct may state a cause of action for retaliation, even though the prisoner has no constitutionally-protected liberty interest in being held at or remaining at a particular facility. *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995). Other actions that may be sufficiently adverse to state a cause of action for retaliation because of protected conduct include: arbitrarily confiscating and destroying an inmate's property and initiating a transfer to another prison (*Rhodes*, 408 F.3d at 568)); placing an inmate in administrative segregation on false charges (*Austin v. Terhune*, 367 F.3d 1167, 1171 (9th Cir. 2004)); validating an inmate as a gang member based on evidence previously deemed insufficient (*Bruce v. Ylst*, 351 F.3d 1283, 1287-88 (9th Cir. 2003)); filing a false disciplinary report (*Hines v. Gomez*, 108 F.3d 265, 267-268 (9th Cir. 1997)); and labeling an inmate a "snitch" in order to subject him to retribution by other inmates (*Valandingham v. Bojorquez*, 866 F.2d 1135, 1138 (9th Cir. 1989)).

Without more, a "mere threat" made to convince an inmate "to *refrain* from pursuing legal redress" is not enough to state a cause of action for retaliation. *Gaut v. Sunn*, 810 F.2d 923, 925 (9th Cir. 1987) (emphasis added). On the other hand, a "mere *threat*," if made in retaliation for the filing of a prison grievance, "can be an adverse action, regardless of whether it is carried out" because "the threat itself can have a chilling effect." *Brodheim*, 584 F.3d at 1270 (emphasis in original). The threat need not be explicit or specific. *Id.* In *Brodheim v. Cry*, for example, the inmate frequently filed prison grievances and a prison official responded to the inmate's formal, post-grievance request for an interview with a note stating that the inmate "'should be 'careful' what he writes and requests in his administrative grievances." *Id.* at 1264. Although the prison official made no specific or explicit threat, the Ninth Circuit concluded that a reasonable fact finder could interpret the warning to imply that some

form of punishment or adverse regulatory actions would follow if the inmate failed to comply. *Id.* at 1270. Based on the warning and other circumstantial evidence indicating the warning was indeed a threat, the Ninth Circuit reversed a factual finding that the inmate produced inadequate evidence of an adverse action. *Id.* at 1271.

With respect to the incident on October 24, 2011, Plaintiff alleges he told Luna that he intended to report Strayhorn's conduct in a formal, written grievance. As outlined above, Plaintiff's verbal threat to file a written grievance constitutes protected speech. In response to this protected speech, Luna allegedly threatened to place Plaintiff in Administrative Segregation if he filed a grievance against Strayhorn. [Doc. No. 6, at pp. 7-8.] Despite Defendants' argument to the contrary, it is not legally significant that Plaintiff failed to allege that Luna actually carried out the threat to place him in Administrative Segregation. Therefore, Plaintiff has sufficiently alleged that Luna took an adverse action against him.

Plaintiff's allegations that Strayhorn twice filed "retaliatory disciplinary charges against him" in connection with the incidents on October 24, 2011 and April 26, 2012 [Doc. No. 6, at pp. 8, 10] are also sufficient to constitute adverse actions. In *Hines v. Gomez*, the Ninth Circuit upheld a jury's verdict that a prison official retaliated against an inmate by filing a "false" disciplinary report. *Hines*, 108 F.3d at 267-268. From Plaintiff's allegation that the disciplinary charges filed against him by Strayhorn were "retaliatory," [Doc. No. 6, at pp. 8, 10], and that Strayhorn routinely fabricates allegations to support disciplinary charges that he uses as a "calculated tactic" to "cover up" his illegal acts against inmates, [Doc. No. 6, at p. 13], it can reasonably be inferred that Plaintiff contends the charges were false. Therefore, the Court finds that Plaintiff's allegations are sufficient. Defendants' Motion to Dismiss is **DENIED** to the extent it seeks dismissal of Plaintiff's retaliation claims on the ground that Plaintiff failed to sufficiently allege that Defendants took adverse actions against him.

### *3. Causation.*

In their Motion to Dismiss, Defendants contend that Plaintiff failed to plead any

facts to satisfy the element of causation. According to Defendants, Plaintiff has not alleged any facts that could show that his protected conduct was the motivation underlying Defendants' alleged acts of filing "retaliatory" disciplinary reports against him. For example, Defendants argue that Plaintiff did not allege that Strayhorn "ever learned that [Plaintiff] actually submitted an administrative grievance. . . ." [Doc. No. 15-1, at p. 9-10.]

The causation element of a First Amendment retaliation claim requires the inmate plaintiff to show that protected conduct was the substantial or motivating factor underlying the defendant's adverse action. *Brodheim*, 584 F.3d at 1271. "Recognizing that the ultimate fact of retaliation for the exercise of a constitutionally protected right rarely can be supported with direct evidence of intent that can be pleaded in a complaint, [citation omitted], courts have found sufficient complaints that allege a chronology of events from which retaliation may be inferred." *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987) (quoting *Benson v. Cady*, 761 F.2d 335, 342 (7th Cir. 1985)). "[T]iming can properly be considered as circumstantial evidence of retaliatory intent." *Pratt*, 65 F.3d at 808. On the other hand, timing alone is generally not enough to support an inference that prison officials took an adverse action against a prisoner in retaliation for the prisoner's participation in protected conduct. *See id.* In *Pratt v. Rowland*, for example, the Ninth Circuit concluded that suspicious timing of an adverse action was not enough to establish causation, because there was nothing to indicate the defendant was "actually aware" of the prisoner's protected conduct. *Id.*

By contrast, the Ninth Circuit in *Hines v. Gomez* agreed there was an evidentiary basis for the jury to find that a prison official filed a disciplinary report with a retaliatory motive. *Hines*, 108 F.3d at 267. The defendant contended that there was no proof that the defendant knew that the inmate had used the prison grievance system. *Id.* at 267-68. The Ninth Circuit noted that prison officials were aware of the inmate's reputation for "complaining" or "whining," and that the defendant had been told by the inmate on the morning of the incident giving rise to the Section 1983 action that the

inmate intended to file a grievance. *Id.* at 268. The *Hines* Court concluded that the evidence "amply support[ed]" the inference that the defendant knew, at least to some extent, of the inmate's use of the grievance system. *Id.*

Although Plaintiff does not specifically allege a causal connection between his protected conduct and the alleged adverse actions, he has pled a chronology of events from which a reasonable trier of fact could infer that Defendants' actions against him were retaliatory. First, the timing of the alleged adverse actions qualify as suspicious because they either took place a short time after protected conduct, or as part of a larger pattern of similar conduct that took place over time. Second, Plaintiff alleges he told both Strayhorn and Luna that he intended to file a formal, written grievance reporting Strayhorn's "serious acts of misconduct." [Doc. No. 6, at p. 7-8.] Because of the timing of the alleged events and because Plaintiff claims that he told both defendants he intended to file prison grievances, a reasonable trier of fact could conclude there is circumstantial evidence to show Defendants were aware of Plaintiff's use of the prison grievance system and were therefore motivated to retaliate.

In addition, Plaintiff has alleged that Strayhorn routinely engages in retaliatory acts to punish inmates for filing grievances to report his behavior. He has attached similar claims as exhibits to the Second Amended Complaint, and has alleged that prison records will show an unusually "large volume" of inmate grievances, disciplinary charges, misconduct reports, incident reports, and altercations involving Strayhorn. [Doc. No. 6, at p. 14.] These allegations, if proven, would further support an inference that Plaintiff's protected conduct was the substantial or motivating factor underlying adverse actions taken by Strayhorn against Plaintiff.

Based on the foregoing, the Court finds that Plaintiff's causation allegations are sufficient when the Second Amended Complaint is read liberally and as a whole. Therefore, Defendants' Motion to Dismiss must be **DENIED** to the extent it seeks dismissal of Plaintiff's retaliation claims on the ground that Plaintiff failed to plead facts to show that his protected conduct was the substantial or motivating factor

1 | underlying adverse actions taken against him by Defendants.

### 4. *Chilling Effect or Other Harm.*

Defendants' Motion to Dismiss argues that Plaintiff has failed to allege that any actions by them had any harmful or chilling effect on his protected conduct. As examples, Defendants argue that Plaintiff has not alleged that he was deterred in any way from filing grievances or that he suffered any other harm or adverse consequences, such as discipline or placement in administrative segregation, as a result of the misconduct reports filed against him by Defendants.

> [A]n objective standard governs the chilling inquiry; a plaintiff does not have to show that 'his speech was actually inhibited or suppressed,' but rather that the adverse action at issue 'would chill *or* silence a person of ordinary firmness from future First Amendment activities.' [Citations omitted.] To hold otherwise 'would be unjust' as it would 'allow a defendant to escape liability for a First Amendment violation merely because an unusually determined plaintiff persists in his protected activity.' [Citation omitted.]

*Brodheim*, 584 F.3d at 1271. "'[S]ince harm that is more than minimal will almost always have a chilling effect[, a]lleging harm *and* alleging the chilling effect would seem under the circumstances to be no more than a nicety." *Id.* at 1270 (quoting *Rhodes v. Robinson*, 408 F.3d at 568 n.11).

Here, Plaintiff's allegations are sufficient because it can be inferred that having a false misconduct report placed in the prison's records and the accompanying threat of future consequences would discourage an ordinary person from filing any further grievances. The Court therefore finds that Plaintiff sufficiently pled a "chilling effect." As a result, Defendants' Motion to Dismiss must be **DENIED** to the extent it seeks dismissal of Plaintiff's retaliation claims for failure to plead facts to establish that Defendants' action chilled the exercise of his First Amendment rights.

### 5. *Legitimate Penological Interest.*

"[A] successful retaliation claim requires a finding that 'the prison authorities' retaliatory action did not advance legitimate goals of the correctionial institution or was not tailored narrowly enough to achieve such goals.' [citation omitted.]" *Pratt*, 65 F.3d

at 806. "The plaintiff bears the burden of pleading and proving the absence of legitimate correctional goals for the conduct of which he complains." *Id.* At the pleading stage, it is sufficient for an inmate to allege that a prison official's actions were retaliatory and were "arbitrary and capricious" or "that they were 'unnecessary to the maintenance of order in the institution.'" *Watison*, 668 F.3d at 1114-15. In *Watison v. Carter*, the Ninth Circuit concluded the inmate implicitly pled the absence of a legitimate penological reason for the alleged adverse actions by claiming that, in retaliation for his filing of prison grievances, the defendant prison officials filed a "*false* disciplinary complaint;" made "*false* statements to the parole board;" and threatened to punch the inmate. *Id.* at 1115-1116 (emphasis in original).

Defendants do not argue that Plaintiff's retaliation claims should be dismissed because he failed to allege that Defendants' action did not advance legitimate correctional goals. The Court notes that Plaintiff has only alleged in summary fashion that Defendants' retaliatory actions did not serve legitimate penological goals. However, Plaintiff has implicitly pled this element. From the allegations in the Second Amended Complaint, it can be inferred that Plaintiff contends that Defendants filed "false" misconduct charges against him which could not serve any legitimate penological goal. [Doc. No. 6, at pp. 8, 10, 13.]

### *C. Sovereign Immunity.*

Defendants contend that Plaintiff has sued them for monetary damages in their official capacities but the Eleventh Amendment does not permit damages claims against state officers in their official capacities. As a result, they seek dismissal of these claims under the Eleventh Amendment. A review of the Second Amended Complaint reveals that Strayhorn and Luna were sued in their individual capacities and in their official capacities. [Doc. No. 6, at p. 2.] Plaintiff seeks $250,000 in damages and $250,000 in punitive damages. [Doc. No. 6, at p. 20.]

The Eleventh Amendment prohibits damage actions against state officials acting in their official capacities. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 &

n. 10 (1989); *Pena v. Gardner*, 976 F.2d 469, 472 (9th Cir. 1992). However, the Eleventh Amendment does not bar actions against state officers in their personal capacities. *Pena*, 976 F.2d at 472-473.

Based on the foregoing, the Eleventh Amendment bars Plaintiff from seeking money damages against Defendants in their official capacities. In addition, there is no possibility that Plaintiff could can amend his Second Amended Complaint to plead facts sufficient to overcome the Eleventh Amendment bar to a suit for money damages against a state actor in his official capacity. *See Silva v. Di Vittorio*, 658 F.3d 1090, 1105 (9th Cir. 2011) (stating that a district court should grant a pro se plaintiff leave to amend "even if no request to amend the pleading was made, unless it determines that the pleading could not possible be cured by the allegation of other facts"). Accordingly, the Court finds that Plaintiff's claims for money damages against Defendants in their official capacities must be **DISMISSED** with prejudice and without leave to amend.

### *III. Conclusion*

For the foregoing reasons, Defendants' Motion to Dismiss the Second Amended Complaint is **GRANTED** in part and **DENIED** in part as follows:

1. Defendants' Motion to Dismiss is **GRANTED** to the extent it seeks dismissal of Plaintiff's claims for monetary damages based on the Eleventh Amendment. Plaintiff's claims against Defendants for monetary damages in their official capacities are **DISMISSED** with prejudice and without leave to amend.

2. Defendants' Motion to Dismiss is **DENIED** to the extent it seeks dismissal of Plaintiff's retaliation claims against Strayhorn and Luna.

**IT IS SO ORDERED.**

Date: 9/3, 2014

HON. ROGER T. BENITEZ
United States District Judge