FILED

2016 MAR -9 AM 11: 14

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

Th

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUBEN GARCIA,<br><br>                Plaintiff,<br>v.<br><br>D. STRAYHORN, et al.,<br><br>                Defendants. | Case No.: 3:13-cv-0807 BEN (KSC)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>**[Doc. No. 53]** |

Before the Court is a Motion for Summary Judgment, filed by Defendants Strayhorn and Luna. (Docket No. 53.) For the reasons outlined below, the Court **GRANTS in part and DENIES in part** Defendants' Motion for Summary Judgment.

## BACKGROUND

Plaintiff Ruben Garcia, a state prisoner proceeding *pro se* and *in forma pauperis*, filed this civil rights action under 42 U.S.C. § 1983, alleging violations of his First Amendment right to free speech. (Docket No. 6.) This Court *sua sponte* dismissed the majority of Plaintiff's claims outlined in the operative Second Amended Complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(b) and 1915A(b) on September 23, 2013. (Docket No. 7.) The remaining two claims involve separate allegations of retaliation by Strayhorn and Luna. Defendants are correctional officers at R.J. Donovan Correctional Facility.

In the first cause of action, Plaintiff alleges that on October 24, 2011, Strayhorn and Luna violated his First Amendment rights by retaliating against him for declaring

1

that he was going to file an official grievance against Officer Strayhorn. The second cause of action alleges that on April 26, 2012, Strayhorn and Luna violated his rights under the First Amendment by retaliating against him for filing a separate grievance against Strayhorn in March of 2012.

Plaintiff asserts that on the morning of October 24, 2011, he was attending an optometry appointment in the Triage and Treatment Area ("TTA") located adjacent to the prison's main plaza.[1] After his appointment, Plaintiff, escorted by a guard and accompanied by other inmates, proceeded to the walkway that led back to his housing unit. Plaintiff encountered Strayhorn at one of the security check points. Defendant Strayhorn and Plaintiff got into a verbal altercation. Plaintiff informed Defendant that due to his improper conduct he would be filing an official 602 grievance.[2] Plaintiff then requested that Strayhorn either give him a direct order or allow him to continue about his way. Defendant Strayhorn opened the security gate and allowed Plaintiff to continue towards his housing unit. After securing the gate, Defendant allegedly continued to shout at Plaintiff:

> "You punk b[****] don't get it…you six-o-two me and you gonna [sic] make me f[***] you up! I'm not like others you six-o-two, you hear! Coward, P.C.,[3] scary bird! Try me b[****], try me b[****], try me b[****]! I know you hear me! Try me b[****]!

Defendant Strayhorn then reopened the gate and approached Plaintiff shouting "so what are you going to do? What's up? I'm right here."

Seeing the confrontation, Strayhorn's superior officer, Defendant Luna, arrived on scene. Plaintiff informed Luna of his intention to file a 602 grievance against Strayhorn.

---

[1] Defendants dispute Plaintiff's version of the facts and provide declarations of both defendants in support of their Motion.
[2] Grievances raised by prisoners are filed on California Department of Corrections and Rehabilitation Form 602.
[3] Defendants state that "P.C." is the acronym for inmates in protective custody. Plaintiff asserts that "P.C." is used in the prison community to denote someone who is an informant, colloquially referred to as a "snitch".

Defendant Luna allegedly told Plaintiff, "[if] you file [a grievance] against my Officer[, ] I'll lock you up in administrative segregation." Plaintiff asserts that he told the defendants that threats of retaliation would not prevent him from filing a complaint against both officers. Defendant Luna escorted Plaintiff back to his cell and placed him on a confined to quarters status ("CTQ").[4] Plaintiff remained in CTQ status for approximately eight days—from October 24 to October 31. Plaintiff thereafter received a Form 128 written counseling chrono documenting the incident in his record. Plaintiff contends that the chrono contained false information regarding his conduct and left out the improper conduct of the officers.

Plaintiff asserts that on March 16, 2012, he filed a 602 grievance against Officer Strayhorn for interfering with his medical care two days prior. On April 15, 2012, Plaintiff filed an inquiry as to the status of his March 16 grievance. On April 26, 2012, Plaintiff was scheduled for medical treatment at the Facility C Medical Clinic. Upon arriving at the clinic, Defendant Strayhorn placed Plaintiff in handcuffs and turned him over to a Sergeant for calling Strayhorn "a child molester in green." Plaintiff asserts this was a false accusation, and that he missed his appointment as a result.[5]

## STANDARD OF REVIEW

The "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any

---

[4] CTQ is "an authorized disciplinary hearing action whereby an inmate is restricted to their [sic] assigned quarters for a period not to exceed five days for administrative rule violations and ten days for serious rule violations." Cal. Code Regs. tit. 15, § 3000.

[5] The third party inmate 602 complaints provided in support of Plaintiff's Opposition, alleging separate incidents of retaliatory conduct by Defendant Strayhorn, are not admissible to demonstrate his character or propensity to engage in retaliatory conduct. Fed. R. Evid. 404(b)(1) ("Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."). Therefore the Court did not consider them.

material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To meet the burden of proof, a moving defendant must either produce evidence negating an essential element of the plaintiff's claim or show that the plaintiff does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. *Nissan Fire & Marine Ins. Co. v. Fritz Co.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586. "[T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial.*" *Id.* at 587 (internal quotation marks omitted). Rule 56 requires the nonmoving party to go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial on all matters as to which he has the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 324 (internal quotation marks omitted). In deciding a summary judgment motion, it is not the role of the District Court to make credibility determinations, weigh the evidence, or draw legitimate inferences from the facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.*

## **DISCUSSION**

To prevail on a claim under section 1983, a plaintiff must prove two elements: (1) that a person acting under color of state law committed the conduct at issue; and (2) that the conduct deprived the claimant of some right, privilege or immunity conferred by the

Constitution or the laws of the United States. 42 U.S.C. § 1983; *Nelson v. Campbell*, 541 U.S. 637, 643 (2004).[6]

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005). Action taken by a prison official against an inmate in retaliation for pursuing a grievance or litigation may violate an inmate's rights under the First Amendment. *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989).

To satisfy the causation element of a First Amendment retaliation claim, plaintiff must show that "his protected conduct was the substantial or motivating factor behind the defendant's conduct." *Brodheim v. Cry*, 584 F.3d 1262, 1271 (9th Cir. 2009) (internal citations and quotations omitted). A plaintiff's mere allegation or speculation that there is a causal link between protected activity and an adverse action does not create a factual dispute for purposes of summary judgment. *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081-82 (9th Cir. 1996). Plaintiff must also show that he suffered an adverse action sufficient to cause an inmate of ordinary firmness to be chilled by it. *Rhodes*, 408 F.3d at 568-69.

## I. Plaintiff's October 24, 2011 Retaliation Claim

Defendants argue that they are entitled to summary judgment because Plaintiff cannot satisfy the following three elements of a retaliation claim: causation, legitimate penological purpose, and adverse action.

///

///

---

[6] The parties do not dispute that Defendants were acting under color of law. Thus, the only question here is whether Plaintiff was deprived of some constitutional right.

A. Causation

Defendants contend that Plaintiff did not express his intent to file a grievance until the very end of the October 24, 2011 incident.

The Ninth Circuit has explained that "[i]n the First Amendment context, a plaintiff creates a genuine issue of material fact on the question of retaliatory motive when he or she produces, in addition to evidence that the defendant knew of the protected speech, at least (1) evidence of proximity in time between the protected speech and the allegedly retaliatory decisions [or actions], (2) evidence that the defendant expressed opposition to the speech or (3) evidence that the defendant's proffered reason for the adverse action was false or pretextual." *Corales v. Bennett*, 567 F.3d 554, 568 (9th Cir. 2009). "[T]iming can properly be considered as circumstantial evidence of retaliatory intent." *Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995). However, timing alone is not enough and must be supported by more than "sheer speculation." *Id.*

As the parties disagree over the sequence of events, the Court views the facts in the light most favorable to Plaintiff, the nonmoving party. *See Anderson*, 477 U.S. at 255. According to Plaintiff, this case began when Officer Strayhorn overheard Plaintiff telling another inmate that someone was going to file a grievance[7] against Strayhorn, and that everything would soon catch up to him. In response, Strayhorn confronted Plaintiff, challenging him to file a grievance; asserting that it would not matter because Plaintiff was "P.C." and no one would believe him. Plaintiff then told Strayhorn that he would file a grievance. According to these facts, Officer Strayhorn was aware of Plaintiff's intent to file a grievance at the beginning of the alleged episode.

---

[7] It is undisputed that filing a 602 grievance against prison officials is a protected activity under the First Amendment. *See Rhodes*, 408 F.3d at 567. "Without those bedrock constitutional guarantees, inmates would be left with no viable mechanism to remedy prison injustices." *Id.* "And because purely retaliatory actions taken against a prisoner for having exercised those rights necessarily undermine those protections, such actions violate the Constitution quite apart from any underlying misconduct they are designed to shield." *Id.* (citing *Pratt*, 65 F.3d at 806 & n.4).

6

Strayhorn's subsequent threats and taunts to Plaintiff regarding the grievance occurred immediately afterwards. The same goes for Defendant Luna. Luna approached Strayhorn and Plaintiff during their altercation. Plaintiff informed Luna that he would be filing a grievance against Strayhorn for misconduct. Luna then responded that he would place Plaintiff in administrative segregation if he filed a grievance. Plaintiff again told them that he would still file a grievance. Luna then escorted Plaintiff back to his cell and placed him on CTQ status. Luna also wrote a memorandum documenting the incident and Strayhorn issued a Form 128 chrono.

Plaintiff states that he expressed a clear intent to file a 602 grievance against Strayhorn and in response, both Defendants allegedly made threats to Plaintiff if he took such an action. Additionally, as supported by the declaration of L. Garcia, Plaintiff was held in CTQ status for approximately eight days directly following the incident. The timing of the events combined with alleged verbal opposition to Plaintiff's speech and Defendants' awareness at the outset of Plaintiff's intent to file a grievance, is sufficient to raise a triable issue of fact regarding Defendants' motives. *See Bruce v. Ylst*, 351 F.3d 1283, 1289 (9th Cir. 2003) (defendants' comments to prisoner along with suspect timing raised a triable issue of fact as to whether defendants' motive behind plaintiff's gang affiliation classification were retaliatory).

B. Penological Purpose

The Court is required to "afford appropriate deference and flexibility" to prison officials when evaluating proffered legitimate correctional reasons for alleged retaliatory conduct. *Pratt*, 65 F.3d at 806.

Defendants argue that Plaintiff was acting unruly, and their purpose of documenting the incident was to instill order. While maintaining order and security is a legitimate penological purpose, *see Barnett v. Centoni*, 31 F.3d 813, 816 (9th Cir. 1994), Defendants' reasoning ignores Plaintiff's contentions completely. According to Plaintiff's version of the facts, as stated above, Defendants had no reason to taunt or threaten him or place him in handcuffs or in CTQ status. Plaintiff was walking from his

7

optometry appointment, escorted by a guard and accompanied by other inmates, when he needed to pass through the gate where Officer Strayhorn was stationed. Plaintiff was not behaving disorderly or harassing anyone. As such, Defendants had no legitimate penological purpose to reprimand Plaintiff in any way.

### C. Adverse Action

Plaintiff must also show that he suffered a harm and that the adverse action was sufficient to cause an inmate of ordinary firmness[8] to be chilled by defendants conduct. *Rhodes*, 408 F.3d at 568-69. Plaintiff is not required to show that his First Amendment rights were actually chilled by defendants conduct.[9] The test applied is not based on the subjective view of the particular plaintiff but rather an objective assessment from the perspective of the inmate of ordinary firmness. *Rhodes*, 408 F.3d at 568 ("It would be unjust to allow a defendant to escape liability for a First Amendment violation merely because an unusually determined plaintiff persists in his protected activity.")

The threats to "f[\*\*\* Plaintiff] up" and put him in administrative segregation, and the actual placement on CTQ status for approximately eight days are independently sufficient to satisfy the adverse action element. Threats alone can be sufficient to satisfy this prong. *See Brodheim v. Cry*, 584 F.3d 1262 (9th Cir. 2009) ("[T]he mere *threat* of harm can be an adverse action, regardless of whether it is carried out because the threat itself can have chilling effect.") (emphasis in original). The Court in *Brodheim* found that plaintiff need not establish a specific threat of discipline so long as a reasonable juror, from the record, could interpret the defendants' statements as intimating that some form of punishment or adverse action would follow. *Id.* at 1270-71 ("The power of a

---

[8] The definition of an "adverse action" is not static across all context. *Thaddeus-X v. Blatter*, 175 F.3d 378, 398 (6th Cir. 1999). The "prisoner of ordinary firmness" standard is a recognition that given the normal adverse nature of incarceration, "prisoners may be required to tolerate more than average citizen before a retaliatory action taken against them is considered adverse." *Id.*

[9] Plaintiff concedes in his Second Amended Complaint and Opposition that he was going to file a 602 complaint regardless of defendants' threats or planned retaliation.

8

threat lies not in any negative actions eventually taken, but in the apprehension it creates in the recipient of the threat."). Unlike *Brodheim*, Plaintiff indicates clear threats by Defendants to harm Plaintiff and place him in solitary confinement. In addition to the threatening comments, Plaintiff was actually confined to his quarters from October 24 to October 31.[10]

However, the Court agrees with Defendants that Strayhorn's counseling chrono and Luna's memorandum do not constitute adverse actions. *See Jenkins v. Caplan*, No. 02-5603, 2010 WL 3742659, *1-2 (N.D. Cal. Sept. 16, 2010) (counseling chrono was not an adverse action because it was primarily used for informational purposes and caused no disciplinary consequences); *Williams v. Woodford*, No. 06cv1535, 2009 WL 3283916, *3 (E.D. Cal. Nov. 13, 2009) (same).

In this case, the Court cannot say as a matter of law that a prisoner of ordinary firmness would not have been chilled in the exercise of his constitutional rights by Defendants' alleged threats and taunts, and the placement of Plaintiff on CTQ status.

D. Conclusion

Accordingly, Defendants' Motion for Summary Judgment as to the incidents on October 24, 2011 is **DENIED**.

II.   **Plaintiff's April 26, 2012 Retaliation Claim**

Defendants argue that Plaintiff failed to establish the required causal link between the protected activity and the alleged retaliatory action by defendants. The Court agrees.

First, Plaintiff has not put forth any evidence that Defendant Luna was involved in the April 26, 2012 incident. Second, the only evidence of Strayhorn's retaliatory intent presented to the Court is the timing of the March 16, 2012 grievance in relation to the

---

[10] While Defendants do not argue that CTQ is not a disciplinary or adverse action, they do contend that Plaintiff was never placed in CTQ, which, at best, creates a genuine issue of material fact for the jury to decide.

April 26, 2012 adverse action.[11] Timing alone is not enough to establish a causal link between the plaintiff's participation in protected activity and the allegedly retaliatory actions by prison officials. *Pratt*, 65 F.3d at 808.

There is no evidence in the record to indicate Strayhorn was aware of the March 16 grievance. In addition, Defendants provide the Declaration of B. Self, a Correctional Counselor and custodian of record at the Richard J. Donovan Correctional Facility, which indicates that the grievance was not received by officials until after the April 26, 2012 incident. Plaintiff presents no evidence that Strayhorn was aware of the grievance or that he informed Strayhorn of his intention to file a grievance during the alleged March 14 incident. Plaintiff has failed to provide evidence sufficient to link his participation in a protected activity with Strayhorn's conduct on April 26, 2012. No genuine issue of material fact exists. Therefore, Defendants' Motion for Summary Judgment is **GRANTED** as to the April 26 incident.

## CONCLUSION

Upon consideration of the foregoing, the Court **GRANTS in part and DENIES in part** Defendants' Motion for Summary Judgment.

**IT IS SO ORDERED.**

DATED: March 9, 2016

HON. ROGER T. BENITEZ
United States District Judge

---

[11] The Court assumes without deciding that removal from a valid medical appointment before treatment can be administered is a sufficient adverse action such that a prisoner of ordinary firmness would be chilled in the exercise of their constitutional rights.